IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**BILL SALTER ADVERTISING, INC.,**

    **Plaintiff,**

v.                                                                      CASE NO. 3:11-cv-297-RS-EMT

**SANTA ROSA COUNTY, FLORIDA;**
**SANTA ROSA COUNTY BOARD OF**
**COMMISSIONERS; and**
**SOUTHEAST-SD, LLC,**

    **Defendants.**
_____/

**ORDER**

Before me are Defendants' motions to dismiss (Docs. 28 & 29) and Plaintiff's response to the motions (Doc. 37).

**I. Standard of Review**

In order to overcome a motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S. Ct. 2229, 2232 (1984). I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff. *Shands Teaching*

*Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000)(citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir. 1999)).

## II. Background

Plaintiff, Bill Salter Advertising, Inc. ("Salter"), is a Florida corporation in the business of erecting and operating advertising signs. At issue here are permits under Santa Rosa County, Florida, Code of Ordinances § 8.07.00—Permanent off-premises signs. Section 8.07.01(C)(1) states that along Highway 90 "[n]o off-premises sign shall be placed within two thousand (2,000) feet of any other off-premises sign on the same side of the street right-of-way [or] within a three hundred (300) food radius of another off-premises sign."

On March 2, 2009, Mark Locklin obtained zoning approval from Defendant, Santa Rosa County ("County"), to erect an off-premise sign at the northeast corner of Highway 90 and Woodbine Road. When the permit was awarded, Plaintiff had a State of Florida outdoor advertising permit located within 2,000 feet of Locklin's sign permit, which violates § 8.07.01(C)(1).

The Locklin permit expired on March 2, 2010, and Locklin was notified by the County of its expiration. On March 4, 2010, Defendant Southeast informed the County's zoning officials that it had taken the location over from Locklin and

asked the permit to be extended two months. County granted the extension until May 3, 2010.

On May 3, 2010, when the permit was set to expire, Plaintiff submitted an application to erect an off-premises sign on a parcel adjacent to Southeast's location. Also on May 3rd, Ellis Crane Works, Inc. ("Ellis"), the licensed contractor of Southeast, applied for a building permit at the site. On May 13, 2010, the County informed Plaintiff that its application was being denied because it was "spaced out" by Southeast's permit. Southeast obtained a building permit via Ellis, which was extended by the County to expire on May 20, 2011. Due to nonpayment, Ellis cancelled the Southeast building permit, which became official on February 21, 2011.

On March 2, 2011, Plaintiff submitted another application to erect an off-premises sign on the parcel adjacent to the Southeast site. Recognizing that the Southeast project was over, the County approved Plaintiff's application to erect the proposed sign on March 4, 2011.

Southeast, not yet ready to give up on the project, contacted County staffers and the County Attorney requesting that the County reverse its decision. On March 25, 2011, three weeks after approving Plaintiff's application, the County reversed itself and determined that Ellis' cancellation of the Southeast building

permit was invalid.  The County also revoked Plaintiff's permit stating once again that it was "spaced out" because of Southeast's project.

Plaintiff timely appealed the revocation to the County Board of Adjustments, which affirmed the County's decision, and the Board of Commissioners, which reversed the County's decision.  However, the Board of Commissioners did not revoke Southeast's permit, so although Plaintiff received permission for a permit, he could not build the sign because of the state's spacing requirement.  In addition, when Plaintiff asked the County to comply with the Board's decision, the County refused to issue Plaintiff's permit until he removed another off-premise sign east of the proposed location, which was never a condition mentioned by the Board.

Plaintiff has filed an eight-count complaint for declaratory judgments; violations of substantive due process, procedural due process, and the equal protection clause of the Fourteenth Amendment; violations of the First Amendment; and a state-law claim of inverse condemnation.  Defendants Santa Rosa County and Santa Rosa County Board of Commissioners filed a motion to dismiss (Doc. 28) all counts, and Defendant Southeast-SD, LLC filed a motion to dismiss (Doc. 29) Counts One, Two, Three, Six, and Seven.

### III. Analysis

*Count One*

Count One of the First Amended Complaint (Doc. 20) seeks appellate review of the Board's May 26, 2011, decision to grant Southeast's zoning and building permits. This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." Counts two, three, four, five, and six are all claims within this Court's original jurisdiction and are part of the same case or controversy; therefore, supplemental jurisdiction is proper. *See generally Flava Works, Inc. v. City of Miami, Fla.*, 609 F.3d 1233, 1237-38 (11th Cir. 2010).

Defendants assert that supplemental jurisdiction is improper because under Florida law, a petition for writ of certiorari must be filed within thirty days of the order to be reviewed. Fla. R. App. P. 9.030(c)(2) & 9.100(c)(2). When a district court exercises supplemental jurisdiction over a state claim, state law applies. *Flava Works, Inc.*, 609 F.3d at 1327. In Florida, the timing of an appeal is jurisdictional. *Medley Hardwoods, Inc. v. Rojas*, 4 So.3d 1270 (Fla. 1st Dist. Ct. App. 2010).

Defendants argue that the petition for writ of certiorari was not pled in the original Complaint, and because the First Amended Complaint was filed more than thirty days after the Board's decision, it is untimely and supplement jurisdiction no longer applies.  Defendants' argument hinges on whether the petition for writ of certiorari was properly pled in Plaintiff's original complaint.  In the original complaint, Plaintiff states that he was seeking a "Declaratory Judgment—The Board's Decision to Allow Southeast to Move Forward with Its Signs Is Erroneous" and that "[t]he Board's decision is subject to *de novo* review by this Court." (Doc. 1, p. 8).  The original complaint was filed on June 23, 2011, which is within thirty days of the Board's decision on May 26, 2011.  Plaintiff filed a First Amended Complaint on August 23, 2011, again seeking a declaratory judgment and stating that "[t]he Board's decision is subject to appellate review by this Court." (Doc. 20, p. 10).  The First Amended Complaint, however, was not filed within thirty days of the Board's decision.

Although both Complaints state that Plaintiff is seeking a declaratory judgment, it is clear from the descriptions that Plaintiff is, in fact, seeking appellate review of the Board's decision.  The original Complaint asked for "*de novo* review" of the Board's decision.  Plaintiff's original Complaint was sufficient enough to put Defendants on notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore,

Plaintiff timely filed its petition for appellate review, and the motions to dismiss as to Count One are denied.

## *Count Two*

Count Two alleges that Defendants violated Plaintiff's substantive due process rights under the Fourteenth Amendment by issuing permits to Southeast in violation of the County Code. The Due Process Clause of the Fourteenth Amendment states "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court concluded that this clause implicates two different kinds of procedure rights: substantive due process and procedural due process.

> The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." The Supreme Court has deemed that most—but not all—of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights . . . also merit protection.

*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994).

*McKinney* goes on to state that "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' " *Id.* In addition, "[a]ccording to *McKinney*, non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff

7

alleges that the government acted arbitrary and irrationally." *Greenbriar Village, LLC, v. Mountain Brook,* 345 F.3d 1258, 1263 (11th Cir. 2003).

Plaintiff attempts to fall under an exception to this rule: "When the state-created right is deprived in a manner that implicates a fundamental right, for example, when a state employee is fired in violation of the First Amendment for expressing his views." *Id.* at 1262 n.3 (citing *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554 (11th Cir. 1995)). In Plaintiff's First Amended Complaint, it states that "denial of the Salter permit in clear violation of the applicable regulations have effectively deprived Salter of its ability to speak." (Doc. 20, p. 12). However, when taking all facts alleged in the complaint as true, Plaintiff's case does not fall within the exception.

Nowhere in the First Amended Complaint does Plaintiff allege that he was denied a permit because of the message Salter wished to display on the sign. In fact, Plaintiff never states what the message was going to be. (Doc. 20, p. 9). If the County had denied Plaintiff's permit application in order to prevent Salter from exercising his First Amendment rights, then the exception would apply, but that is simply not the case here. This is a land-use dispute, and property interests do not arise from the Constitution. Therefore, substantive due process does not apply, and Count Two is dismissed.

*Count Three*

In Count Three, Plaintiff alleges that it "has a protected property interest in its lease and sign permit and has a right to sufficient notice and an opportunity to be heard with respect to any governmental decision which will harm such interests." (Doc. 20, p. 13). The Eleventh Circuit requires proof of three elements for a successful procedure due process claim: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006).

Specifically, Plaintiff alleges that because the County has disregarded orders by the Board (its governing body) in the past, seeking an appeal would be futile. (Doc. 20, p. 14). Plaintiff already appealed the County's denial of his permit application, the Board ruled in Plaintiff's favor, and the County still would not grant Plaintiff the permit. According to Plaintiff, "forcing Salter to go through the administrative appeal process a second time would be a futile enterprise." (*Id.*). If state courts do not provide adequate remedies, then procedural due process is violated. *See Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1238-39 (11th Cir. 2003). Plaintiff sufficiently alleges that repeating the same process that has already failed him would not provide an adequate remedy, so this count should not be dismissed.

*Counts Four and Five*

Plaintiff brought a 42 U.S.C. § 1983 action against the County under the Fourteenth Amendment's Equal Protection Clause in Counts Four and Five. To prevail on a selective enforcement equal protection claim, "Plaintiffs must show (1) that they were treated differently from other similarly situated individuals, and (2) that Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against Plaintiffs." *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006). There must be no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff alleges that it was treated differently than Southeast and Locklin. Locklin was granted a permit for a sign that was "spaced out" by Santa Rosa County, Florida, Code of Ordinances § 8.07.01(C)(1); however, when Plaintiff applied for a permit that was also "spaced out," its application was denied. Additionally, the County issued Locklin a permit with the condition that it remove an existing sign. In a similar situation, the County directed Plaintiff to remove an existing sign *before* being issued the permit. Plaintiff states that "[t]here is absolutely no rational basis for the foregoing difference in treatment. Indeed, the regulations are clear, concise, and should have been strictly adhered to by County staff." (Doc. 20, p. 16). If Plaintiff's allegations are true, then Plaintiff sufficiently

meets the requirements to bring these claims. Defendant's motion to dismiss counts four and five is denied.

### *Count Six*

Plaintiff asserts a § 1983 claim under the First Amendment in Count Six. Permit and licensing schemes are a form of prior restraint. "An ordinance that gives public officials the power to decide whether to permit expressive activity must contain precise and objective criteria on which they must make their decisions; an ordinance that gives too much discretion to public officials is invalid." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999).

Plaintiff makes several arguments. First, Plaintiff argues that "although the Sign Ordinance requires a permit prior to erecting a sign, no provision compels a County official to issue a permit if all requirements of the Ordinance are met." (Doc. 20, p. 18). Second, Plaintiff contends that "the Ordinance is permeated with discretion for County officials." (*Id.*). The use of the word "may" in Ordinance §§ 8.09.01(G), 8.10.03(E), 8.10.04, and 8.10.05 is Plaintiff's basis for the allegation that the officials have too much discretion.

As to Plaintiff's first argument, Sign Ordinance § 8.07.01 says, "Permanent off-premises signs *shall* be permitted . . . and shall conform to the requirements below." In addition, to deny a land-use permit application, Florida law requires

that the "local government agency must show by competent substantial evidence that the application does not meet the published criteria." *Broward Cnty v. G.B.V. Int'l., Ltd.,* 787 So.2d 838, 842 (Fla. 2001). Therefore, unless an application fails to meet the requirements in the ordinance, the application must be granted, and Plaintiff's first argument fails.

Plaintiff's second argument rests on the belief that the use of the word "may" the ordinances gives public officials too much discretion. Sign Ordinance § 8.09.01(G) states that it is unlawful to erect or maintain "[s]igns which are not in good repair or which may create a hazardous condition or which are abandoned." Sign Ordinance § 8.10.03(E) states that the "Building Inspection Department may require that plans submitted be prepared by a registered professional engineer of Florida." Sign Ordinance § 8.10.04 states that the "Building Inspection Department may revoke any permit" if the application contained false or misleading information or if the permittee has failed to keep the sign in "good general condition and in a reasonable state of repair." This section gives the permittee thirty days to rectify any violations of the ordinance. Sign Ordinance § 8.10.05 states that the "Community Planning, Zoning, and Development Division may grant an extension to the zoning approval upon demonstration by the applicant of ongoing efforts to construct the approved sign."

The Supreme Court has previously addressed permit and licensing schemes as prior restraints and acceptable limitations: "A licensing standard which gives an official authority to censor the content of a speech differs *toto coelo* from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like." *Niemotko v. Maryland*, 340 U.S. 268, 282 (1951). "Regulations …that ensure the safety and convenience of the people are not 'inconsistent with civil liberties but … [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend." *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941). Certainly having requirements that applications are true and correct and that signs placed on the side of a highway remain in good repair and are designed by an engineer are limited to public safety issues. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322-24 (2002). These ordinances do not give officials unfettered discretion to deny permit applications; therefore, Count Six is dismissed.

*Count Seven*

Plaintiff brings a Florida state-law action for inverse condemnation in Count Seven. "The term 'inverse condemnation' refers to the process by which a landowner recovers damages from a governmental taking of his property, even though no formal takings or condemnation proceedings have been instituted." *Watson Const. Co. v. City of Gainesville*, 433 F. Supp. 2d. 1269, 1281 (N.D. Fla.

2006).  In order to bring this claim, it must be ripe—meaning "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Lost Tree Village Corp. v. City of Vero Beach*, 838 So.2d 561, 570 (Fla. 4th Dist. Ct. App. 2002) (quoting *Williamson Cnty Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)).

Defendants contend that because Plaintiff never sought appellate review of the County's refusal to issue him the permit by the Board that this count is not ripe.  However, Plaintiff has pled that it would be futile to appeal the decision because the County has refused to grant the permit after the Board, its governing body, ruled in Plaintiff's favor on appeal of its first denial.  "A limited exception to the ripeness requirement might exist where, by virtue of past history, repeated submissions would be futile. …[T]his can negate the requirement of pursuing further administrative remedies and the governmental action is effectively treated as a final decision."  *Id.* at 571 (quoting *City of Riviera Beach v. Shillingburg*, 659 So.2d 1174, 1181 (Fla. 4th Dist. Ct. App. 1995)).

Additionally, Plaintiff contends that even if it is granted the permit, an inverse condemnation claim still exists because of the County's unlawful granting of Southeast's permit, which "spaces out" Plaintiff's permit and extinguishes all

economically beneficial use of its property interest.  (Doc. 20, p. 21).  Therefore, Defendants' motions to dismiss Count Seven is denied.

### *Count Eight*

Count Eight seeks a declaratory judgment that Southeast's permit is null and void.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367.  The motion to dismiss as to Count Eight is denied.

### IV. Conclusion

**It is ORDERED:**

1. Defendants' Motions to Dismiss are granted for Counts Two and Six.

2. Defendants' Motions to Dismiss are denied as to the remaining counts.

**ORDERED** on October 25, 2011.

                                        **/s/ Richard Smoak**
                                        **RICHARD SMOAK**
                                        **UNITED STATES DISTRICT JUDGE**